OPINION
{¶ 1} Defendant-appellant Kimo Brown appeals from his conviction and sentence, following a jury trial, on one count of Trafficking in Cocaine, a felony of the fifth degree, one count of Possession of Cocaine, a felony of the fourth degree, five counts of Possession of Cocaine, felonies of the fifth degree, and six counts of Possession of Criminal Tools, felonies of the fifth degree. Brown contends that his trial counsel was ineffective in various respects.
 {¶ 2} Based on our review of the entire transcript of the trial, we conclude that trial counsel was not ineffective. We specifically conclude that there is nothing in this record to suggest that there is any reasonable chance that the outcome of the trial would have been different if Brown's trial counsel had done each of the things that Brown now claims his counsel should have done. Consequently, the judgment of the trial court is Affirmed.
 I {¶ 3} A confidential informant, Robert P. Douglas, Jr., who testified at trial, performed a controlled buy of crack cocaine from Brown at Brown's residence. This led to the issuance of a warrant to search Brown's residence. The execution of that search warrant resulted in the discovery of a digital scale, two crack pipes, a funnel, several plastic baggies, and a box of "Chore Boy," which was described as a "wire mesh-like substance sometimes used for cleaning," that, in the experience of one of the police officers conducting the search, is often used to filter the smoking of crack cocaine. Cocaine residue was found on many of these items.
 {¶ 4} About three months after the search of Brown's residence, he was stopped by a Fairborn police officer for speeding. After being pulled over, Brown told the officer he did not have a valid license, his license having been suspended. The officer confirmed this with the police dispatcher. Pursuant to the established policy of the Fairborn Police Department, Brown's vehicle was towed for impound, and, before being towed, again according to the established policy of the Department, an inventory was taken. During the inventory, the police officer found 2.85 grams of crack cocaine concealed within a pair of knit gloves, in the glove compartment of the car.
 {¶ 5} In two separate indictments, which were consolidated and tried together, Brown was charged with: one count of Trafficking in Cocaine, a felony of the fifth degree; one count of Possession of Cocaine; a felony of the fourth degree; five counts of Possession of Cocaine, felonies of the fifth degree; and six counts of Possession of Criminal Tools, felonies of the fifth degree.
 {¶ 6} Richard Nystrom was assigned to represent Brown in the trial court. The State provided discovery, pursuant to Crim. R. 16, and asked for reciprocal discovery. Brown entered a plea of not guilty, posted bond, and was released on bond.
 {¶ 7} On Brown's behalf, Nystrom filed motions to enter a plea of not guilty by reason of insanity, and to find Brown incompetent to stand trial. A sanity and competency evaluation was ordered. Following a hearing, Brown was found competent to stand trial.
 {¶ 8} Just prior to the trial, Brown raised the issue of his trial counsel's effectiveness. The trial court conducted a suitable inquiry, concluded that there was no basis to substitute counsel, advised Brown of his right to represent himself, and inquired of Brown concerning his intentions. During this colloquy, it became apparent that there had been active plea negotiations, resulting in an offer by the State that Nystrom concluded was a good one, but that Brown had decided not to take. Nystrom advised the trial court as follows:
 {¶ 9} "It was a last minute, namely last week, change of offer from the State and I was required to notify Mr. Brown of that. I did. I advised him that it was a rational and reasonable, generous offer, but it included having to serve a short prison term, which Mr. Brown does not like to hear. He has never liked to hear. He thought he could somehow or another avoid it.
 {¶ 10} " * * *
 {¶ 11} "Mr. Brown has never given me a name of any witness to call that had any relation to the facts of this case. He may have a character witness, but he's not even told me that until today."
 {¶ 12} Brown disputed the accuracy of Nystrom's representations, but it is apparent that the trial court credited Nystrom, not Brown, where their accounts differed.
 {¶ 13} Following a jury trial, Brown was convicted on all counts, as charged. The trial court imposed a sentence aggregating 28 months. The trial court told Brown that it regarded him as "salvageable," and that it had chosen the 28-month prison term with care. The trial court recommended that Brown utilize the OASIS program while in prison, and that if Brown were to realize the maximum benefit from that program and were otherwise eligible, it was the trial court's intention to approve judicial release at that time.
 {¶ 14} From his conviction and sentence, Brown appeals.
 II {¶ 15} Brown's sole assignment of error is as follows:
 {¶ 16} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE TRIAL COURT LEVEL, WHICH RESULTED IN A FUNDAMENTALLY UNFAIR PROCEEDING, WARRANTING A REVERSAL OF HIS CONVICTION."
 {¶ 17} As Brown notes, there is a strong presumption that licensed counsel is competent.
 {¶ 18} State v. Bradley (1989), 42 Ohio St. 3d 136. That decision, following
Strickland v. Washington (1984), 466 U.S. 668, adopts a two-part test that requires, for reversal, both that trial counsel's performance must fall below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. With that test in mind, we consider Brown's claims of ineffectiveness.
 A. Failure to Challenge the Search Warrant. {¶ 19} Many of the charges resulted from contraband found during the search of Brown's residence. Brown asserts that: "Counsel for Appellant did not examine the search warrant, or review its sufficiency. No Motion to Suppress was filed or entertained, nor did an evaluation of the affidavit supporting the search warrant occur. Counsel did not inquire into the legal sufficiency of the affidavit supporting the search warrant."
 {¶ 20} The only part of this assertion that finds support in the record is that no motion to suppress was filed. Neither the affidavit nor the search warrant are in the record. What is in the record is the testimony of both Yellow Springs police officer Thomas Jones, who arranged the controlled buy, and Robert P. Douglas, Jr., the then-confidential informant who made the buy. Their testimony established that Douglas was searched, and found to have nothing on his person besides the $50 he used to buy the crack cocaine. Jones watched him go to Brown's residence and come back. The transaction was monitored by audio, although no recording was offered in evidence. Upon returning to Jones, who was watching from outside Brown's residence, Douglas was found to have nothing on his person besides a piece of what appeared to be, and was later determined by the Miami Valley Regional Crime Laboratory to be, crack cocaine.
 {¶ 21} This record not only fails to establish that an attack on the validity of the search warrant, had it been made, would have had any reasonable chance of success, it persuades us, to the contrary, that there was no reasonable chance that the validity of the search warrant could have been successfully attacked.
 B. The Cross-Examination of the Confidential Informant. {¶ 22} Brown next contends that his trial counsel was ineffective for having failed to ascertain that the State intended to call Douglas, the confidential informant, as a witness, and that, as a result, trial counsel's cross-examination of Douglas was ineffective. Although trial counsel was unsuccessful in impeaching Douglas on the issue of having received a benefit from the State in exchange for his testimony, counsel did establish, in cross-examination, that Douglas was a drug user at the time of the controlled buy.
 {¶ 23} Even if we assume that trial counsel fell below an objective standard of reasonableness by having failed to establish, before trial, that Douglas was going to testify, and by having failed to prepare to cross-examine Douglas, this record fails to establish that trial counsel's deficiency in this regard affected the outcome of the trial. Even if trial counsel had thoroughly discredited Douglas as a witness, it was a controlled buy, carefully monitored by the police, including an audio monitor of the transaction. And it took place at Brown's residence.
 C. The Telephone Bill. {¶ 24} One piece of evidence admitted at trial was a telephone bill, from SBC, to Brown at the address of the premises where the contraband was found. The bill was found on the premises. Brown faults his trial attorney for not having objected to this evidence on hearsay grounds.
 {¶ 25} Even if the telephone bill addressed to Brown were inadmissible hearsay, which we doubt, there is no reasonable probability that counsel's failure to have objected to it affected the outcome of the trial. The telephone bill's sole purpose was to prove that Brown was the owner and occupant of the premises. But Brown admitted this to the police at the time of the search. That he owned and occupied the premises where the contraband was found, and where the earlier controlled buy occurred, was never in dispute.
 D. The Chain of Custody of the Evidence. {¶ 26} Brown next complains that the evidence found during the search was adm itted in evidence without any proof of chain of custody. Each item was identified by the police officer who found it, as the item that the officer found during the search. These included a digital scale, a funnel, scrubbing pads (the "Chore Boy"), baggies, and two crack pipes, one of which was inside a sock. No reason to doubt that these objects were, in fact, the objects identified respectively by each officer as the one that officer found during the search is apparent in the record. Therefore, any attempt to impeach the accuracy of the identifications of these objects by referring to the lack of proof of chain of custody was unlikely to have affected the outcome of the trial.
 E. "Small time user with a drug problem * * * ." {¶ 27} Brown complains that in closing argument, his trial counsel referred to him as a small-time user with a drug problem, characterizing this reference as "one final blow to his right to have effective assistance of counsel." First of all, even Brown's father, who testified as a character witness, acknowledged that the family knew that Brown used drugs.
 {¶ 28} Brown's trial counsel did not have much to work with in closing argument. This was an open-and-shut case. Trial counsel was reduced to quibbling over the credibility of the confidential informant (which affected, in the eyes of the jury, only one of the thirteen counts), and suggesting to the jury that Brown was grossly over-charged. In that connection, counsel suggested that most, if not all, of the "criminal tools" were simply items that could be purchased at any Wal-Mart, K-Mart, or Krogers:
 {¶ 29} "The particular items are called criminal tools. They're all ordinary household goods, things that anybody could get at any local store, including the digital scales.
 {¶ 30} "Some people use digital scales because they're small, simple, easy to use and accurate for doing a variety of things, not necessarily in the drug trade. It's all assumption that it's going to be in the drug trade. No proof that it is in the drug trade. Assumptions are not beyond a reasonable doubt. That's what we've got.
 {¶ 31} "Small amounts, no stash, multiple examples of the same thing, everyday items, assumptions, and other peaople that could have been there and could be responsible for more or less of what? We don't know. Can you contribute [sic] every bit to Kimo Brown? Questions. Do you know you can attribute every one to Kimo Brown? No. At least I don't think you can.
 {¶ 32} "Then we have the stop. Kimo Brown was stopped on the highway for speeding. He shouldn't be speeding. He shouldn't be driving without a license. And what do we find? We find, again, a little bit of crack in a glove compartment in a little tiny plastic bag that's used for anything, or can be used for anything.
 {¶ 33} "You can pick it up, as I say, at Wal-Mart or K-Mart, you know, pick your store, Krogers, whatever your favorite store you can find these things.
 {¶ 34} "Small-time user with a drug problem and we are here arguing over this thing. It's as if he's some major Yellow Springs trafficker.
 {¶ 35} "Use some sense, folks. Don't get blown away by all of this stuff. Look at it all, consider it, consider it fairly, consider it fully, can't ask for anything more. I know you will do it. Appreciate it. Thank you."
 {¶ 36} Given the tightness of the evidence of the controlled buy, Brown could not effectively deny that he sold Douglas crack cocaine, and he could not effectively deny that he was caught in the possession of crack cocaine, in the glove compartment of his vehicle, when he was stopped while driving that vehicle, and was its sole occupant. His best chance was to persuade the jury that he was just a small-time user, who didn't deserve multiple criminal tools convictions. We cannot say that Brown's trial counsel was ineffective for having presented Brown to the jury in that light at the end of his closing argument.
 F. The Traffic Stop. {¶ 37} Brown finally argues that his trial counsel was ineffective for having failed to challenge, at trial, the validity of the traffic stop. He faults his trial counsel for not having questioned the officer in detail as to the reason for the stop, and for not having challenged the hearsay nature of the officer's testimony concerning the ownership of the vehicle and the verification of the suspended status of Brown's license through the Bureau of Motor Vehicles.
 {¶ 38} There are a number of problems with this argument. First, it should really be made in connection with an argument that trial counsel should have moved to suppress the evidence obtained as a result of the stop. Other than the ownership of the vehicle, none of this evidence was material to the issue of Brown's possession of the crack cocaine and gloves. As to the ownership of the vehicle, David Hiles, the Fairborn police officer who made the stop, testified that Brown confirmed he was the owner, which renders superfluous any confirmation by the BMV of ownership.
 {¶ 39} As to the other matters, taking Brown's argument as an argument that his trial counsel should have moved to suppress the evidence obtained as a result of the stop, it suffers from the basic infirmity that there is nothing in this record to suggest that the motion to suppress, had it been made, had any chance of success. The record reflects that this was a routine stop for speeding, based upon two readings by laser radar that were well over the speed limit (81 miles per hour and 80 miles per hour). Hiles testified that Brown, himself, said that he had no valid license, and that it was the policy of the Fairborn Police Department, where the sole occupant is found to have no valid license, to tow and impound the vehicle for safe keeping, and to inventory the vehicle before towing to make sure that any valuables are identified and secured. No basis suggests itself in this record for a successful challenge to the propriety of the stop and inventory leading to the discovery of the gloves and cocaine. Therefore, even if we were to hold that Brown's trial counsel's representation fell below an objective standard of reasonableness when he failed to challenge the stop and inventory, we cannot possibly find that this failure had a reasonable probability of affecting the outcome of the trial.
 {¶ 40} Brown's sole assignment of error is overruled.
 III {¶ 41} Brown's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and DONOVAN, J. concur.